

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-08-096-CV

CHARLES LAMAR BEDINGHAUS                                        APPELLANT

V.

ANDREA L. ADAMS                                                       APPELLEE

------------

## FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I.  Introduction

In three issues, Appellant Charles Lamar Bedinghaus asserts that the trial court erred in granting a family violence protective order against him.  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

Sixty-seven-year-old Bedinghaus and Appellee Andrea L. Adams dated for approximately ten months. Six months after the relationship ended, Adams filed an application for a protective order against Bedinghaus. Adams provided evidence that Bedinghaus took the following actions:

- Sent 600 to 800 emails or text messages to Adams after they broke up.

- Sent a text to Adams saying, "Just don't ever relax because that's when I will get my chance and get you I will . . . . I'll always be around, close, waiting for my opportunity to get even with you."

- Sent an email to Adams saying, "So now you will suffer the consequences that you so well deserve," "[Y]ou'll pay for your sins," and "I will get you."

- Sent an invoice to Adams showing that he had hired and paid a private investigator to follow her.

- Hired a private investigator to watch Adams and faxed Adams information from the private investigators.

- Printed derogatory statements about Adams and sent them to her relatives, neighbors, friends, and employer.

- Created and/or posted blogs on the internet that referenced Adams.

- Obtained Adams's telephone number after she changed it.

- Threatened Adams into unblocking her email address so that he could continue to contact her.

2

- Came onto Adams's property and staked out the children's home where Adams was employed.

- Told Adams that he saw her while she was vacationing at the Horseshoe Casino in Bossier City, Louisiana.

As a result of the foregoing, Adams sought assistance from Bedinghaus's family, his attorney, and the police. Further, Bedinghaus stated at trial that he wanted to hurt Adams as he had been hurt and that he believed Adams "forced him" to take some of his actions by not apologizing to him.

During the hearing, the trial court found that the threats contained in various messages constituted family violence and that family violence had occurred in the past and was likely to be committed in the future. He then granted Adams's protective order. *See* Tex. Fam. Code Ann. §§ 81.001, 85.001 (Vernon 2005). The protective order prohibited Bedinghaus, with respect to Adams, from (1) committing any act intended to result in, or to constitute a threat that reasonably places her in fear of, physical harm, bodily injury, assault, or sexual assault; (2) communicating directly with her or with members of her family in a threatening or harassing manner, including the internet; (3) communicating a threat against her through any person; (4) communicating with her in any manner, including but not limited to electronic communications; (5) engaging in conduct to harass, annoy, alarm, abuse, torment, or embarrass; (6) going to or near her residence or place of

3

employment or business; and (7) possessing a firearm or ammunition. The court also made seventeen findings of fact, including the following that Bedinghaus challenges:

> 5. Respondent, Charles Lamar Beginghaus, has committed acts that were threats that reasonably placed Applicant, Andrea L. Adams, in fear of imminent physical harm, bodily injury, or assault.
>
> 6. After termination of the parties' dating relationship, Respondent, Charles Lamar Bedinghaus repetitively contacted Applicant, Andrea L. Adams, through telephonic and electronic communication. Applicant requested that Charles Lamar Bedinghaus stop his contact but Charles Lamar Beginhaus did not stop that conduct.
>
> 7. Respondent, Charles Lamar Beginghaus, contacted an ex-husband, an employer, family and friends of Andrea L. Adams and made derogatory statements about Andrea L. Adams.
>
> 8. Respondent, Charles Lamar Bedinghaus, compiled derogatory statements about Andrea L. Adams and publicly posted them on his Internet blog, where they were available to the public.
>
> 9. Between the date of service of the initial protective order on Respondent, Charles Lamar Beginghaus, and the date of the hearing on January 18, 2008[,] on the application for a protective order, Respondent, Charles Lamar Bedinghaus, continued to contact Applicant, Andrea L. Adams.
>
> 10. The protective order hearing was conducted over the course of two hearing dates, those being January 18, 2008[,] and February 14, 2008. When the Court recessed the case on January 18, 2008, the Judge instructed both parties in open court not to contact the other party. During the recess between January 18, 2008[,] and February 14, 2008, Respondent, Charles Lamar Bedinghaus, violated the Court's instructions and contacted the Applicant.

4

11. Family violence is likely to occur in the future.

This appeal by Bedinghaus followed.

### III.  Legal and Factual Sufficiency

In his first two issues, Bedinghaus complains that the trial court erred by granting the family violence protective order because the evidence is legally and factually insufficient to support the order.

### A.  Standard of Review

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960).  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co.*

*v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

**B. Family Violence**

Under the Texas Family Code, "family violence" is defined to include "dating violence," which in turn is defined as

> an act by an individual that is against another individual with whom that person has or has had a dating relationship and that is intended to result in physical harm, bodily injury, assault, or sexual assault *or* that is a threat that reasonably places the individual in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself.

Tex. Fam. Code. Ann. §§ 71.004(3), 71.0021(a) (Vernon 2005) (emphasis supplied).  Because of the disjunctive "or" between the two phrases of the "dating violence" definition, that term includes a threat without an actual act

6

of violence. Further, the definition implies that the "threat" depends upon the reasonable belief of the person who is the object of the threat. *See id.* § 71.0021(a).

Here, Adams gave the following uncontroverted testimony that Bedinghaus's actions placed her in fear of imminent physical harm:

A. . . . I'm afraid. I never know from one minute to the next.

. . . .

Q. And you believe that to be a threat of physical violence?

A. I do.

. . . .

Q. Does the fact that you know he has firearms frighten you?

A. Yes, it did.

. . . .

Q. But in addition to that, were there a number of other things that he threatened to do?

A. Yes.

Q. And did some of those cause you to be in fear of physical harm?

A. Yes.

Q. Were you afraid that you might suffer bodily injury?

A. Yes.

7

Q. Were you concerned that he might assault you?

A. Yes.

Q. Did email refer to he would get to you -- I'm going to paraphrase slightly, but he would get to you when you least expected it?

A. Yes, it did.

Q. And refer to that it would be in the future?

A. Yes.

The record, as previously partially recounted, is replete with reasonable bases for her fear, including being followed by private investigators hired by Bedinghaus; Bedinghaus having been on her property and at her place of work; and Bedinghaus's emails stating "I [will] get even with you for what you did," "I will get you real good one day when you are least expecting it," "I will always be around, close, waiting for my opportunity to get even with you. It will happen . . . you can bank on it . . . when you least expect it," "[Y]ou and Benny Boy are both going to deeply regret the antics that you [guys] tried to pull," "[T]his is not going to end well," "If you even begin to think that you can't be hurt anymore than you have been  . . . then, you're very naive and innocent," and "I hope you [don't] choke on your turkey.  Santa will come early at your house this year."

Bedinghaus did not deny at the hearing that he intended to place Adams in fear of imminent physical harm; rather, he argued that he did not intend to cause her actual physical harm. This, however, is not the reasonableness test previously articulated. Further, although he contends that his statements are taken out of context and often refer to court action, not physical violence, his interpretation of his actions and their reasonableness is likewise not the test previously discussed.

Based on the foregoing, considering the evidence favorable to the court's findings if a reasonable factfinder could and disregarding evidence contrary to the finding unless a reasonable factfinder could not, we hold that there is legally sufficient evidence to support the court's findings that family violence had occurred and was likely to occur in the future. Likewise, after considering and weighing all of the pertinent evidence, we cannot say that the evidence supporting the court's findings is so weak or contrary to the overwhelming weight of all the evidence that it should be set aside and a new trial ordered. We overrule Bedinghaus's first and second issues.[2]

---

[2] We need not address Bedinghaus's third issue, in which he complains that the trial court abused its discretion by granting the protective order, because this court reviews such challenges for sufficiency of the evidence, measured by legal and factual sufficiency contentions. *See Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 823 (Tex. App.—Fort Worth 2007, no pet.); *see also* Tex. R. App. P. 47.1.

9

## IV. Conclusion

Having overruled Bedinghaus's dispositive issues, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: LIVINGSTON and MCCOY, JJ.; and WILLIAM BRIGHAM, J. (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: February 5, 2009