**CENTRAL READY MIX CONCRETE COMPANY, INC., Petitioner**

**v.**

**Luciano ISLAS, Respondent.**

**No. 05–0940.**

Supreme Court of Texas.

Argued March 21, 2007.

Decided June 29, 2007.

Roy S. Dale, William D. Mount Jr., Katie P. Klein, Dale & Klein, L.L.P., McAllen, for Petitioner.

Sean F. O'Neill, Sean T. Beiter, Law Offices of Sean F. O'Neill, P.C., San Antonio, Francisco Javier Garza, Hodge, James and Garza, L.L.P., Harlingen, Kevin M. Beiter, Hornberger Sheehan Fuller & Beiter, Inc., San Antonio, for Respondent.

Raymond Alan Cowley, Cox, Smith, Matthew, McAllen, for Other.

Justice BRISTER delivered the opinion of the Court.

An injured employee obtained a jury verdict against his employer (who carried no workers' compensation insurance) and the owner whose truck he was repairing. The trial judge set aside the verdict against the latter, but the court of appeals reversed. Based on well-established rules of Texas law, we reverse and reinstate the trial court's judgment.

Central Ready Mix Concrete Company delivers premixed concrete in trucks with rotating drums. Inevitably, some leftover concrete hardens in the drum, which periodically must be cleaned from inside by jackhammer. After an inspector with the Occupational Safety and Health Consultation Program (a division of the Texas Workers' Compensation Commission) recommended that Central contract out this cleaning work, it hired a former employee named Eugene Taylor. Central gave Taylor written safety instructions that included lock-out and tag-out procedures to ensure the drum was never rotated while someone was still inside. It was disputed whether Taylor passed these instructions on to his employees.

In January 2000, Luciano Islas was severely injured when one of his coworkers rotated a drum while Islas was crawling out of it through an access panel, pinning him against the frame of the truck. In an effort to free him, a supervisor restarted the truck but rotated the drum in the same direction, crushing him further. A blow torch was finally employed to free Islas, and he was hospitalized for five days with a crushed pelvis.

A jury found the cleaning job "inherently dangerous" and a "peculiar risk," assigned fault 70 percent to Taylor, 20 percent to Central, and 10 percent to Islas, and assessed damages at $290,700. The trial court granted a take-nothing judgment notwithstanding the verdict in favor

of Central, signing a judgment against Taylor alone for all Islas's damages (less a percentage reflecting his own negligence).

■ Islas appealed the take-nothing judgment for Central, and the court of appeals reversed. In its memorandum opinion, the court said it would "examine the record for evidence supporting the jury finding and ignore all evidence to the contrary." As we clarified a few months later in *City of Keller v. Wilson,* this standard is proper so long as a reviewing court keeps in mind that some contrary evidence cannot be ignored.[1] The standard for reviewing a judgment notwithstanding the verdict, like all other motions rendering judgment as a matter of law, requires a reviewing court to credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not.[2]

■ As this Court has held repeatedly, owners like Central generally have no duty to ensure that an independent contractor performs its work in a safe manner.[3] There is no dispute Taylor was an independent contractor and thus was responsible for training and monitoring his own employees. Central could be liable to Taylor's employees, but only to the extent it retained contractual or actual control of them.[4] Here, there was no contract granting Central such control, and no evidence it exercised actual control (or was even present) when Taylor's employees performed this work.

■ The court of appeals, however, pointed to three kinds of evidence it believed supported the jury verdict. First, there was testimony Central knew this work could be "very dangerous," but failed to warn Taylor of the hazards involved. But the duty to warn independent contractors of concealed hazards applies to premises conditions (which an owner should know about) rather than the contractor's own work (which the contractor should know about).[5] In any event, the dangers of rolling an employee about inside a concrete mixer are so obvious they cannot constitute a concealed hazard imposing on Central a duty to warn.[6]

1. 168 S.W.3d 802, 811 (Tex.2005) ("But it is important that when courts use the exclusive standard and disregard contrary evidence, they must recognize certain exceptions to it.").

2. *Id.* at 823 ("Judgment without or against a jury verdict is proper at any course of the proceedings only when the law does not allow reasonable jurors to decide otherwise."); *accord, Dowling v. NADW Mktg., Inc.,* 631 S.W.2d 726, 728 (Tex.1982) ("To sustain the action of the trial court in granting the motion for judgment notwithstanding the verdict, it must be determined that there is no evidence upon which the jury could have made the findings relied upon. In acting on the motion, all testimony must be considered in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in that party's favor."); *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 777 (Tex.1974) (same); *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 550 (Tex.1962) (same); *Houston Fire & Cas. Ins. Co. v. Walk-*

*er,* 152 Tex. 503, 260 S.W.2d 600, 603–04 (Tex.1953) (affirming trial court's implied disregard of one jury answer based on "consideration of the transcript as a whole"); *Neyland v. Brown,* 141 Tex. 253, 170 S.W.2d 207, 211 (Tex.1943) (considering judgment non obstante veredicto "in the light of the record as a whole").

3. *Fifth Club, Inc. v. Ramirez,* 196 S.W.3d 788, 791 (Tex.2006); *Shell Oil Co. v. Khan,* 138 S.W.3d 288, 293 (Tex.2004); *Coastal Marine Serv. of Tex., Inc. v. Lawrence,* 988 S.W.2d 223, 225 (Tex.1999); *Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 527 (Tex.1997).

4. *See Khan,* 138 S.W.3d at 292.

5. *Id.* at 295; *Coastal Marine,* 988 S.W.2d at 225; *Shell Chem. Co. v. Lamb,* 493 S.W.2d 742, 746 (Tex.1973).

6. *See Wilhelm v. Flores,* 195 S.W.3d 96, 98 (Tex.2006) (per curiam); *Khan,* 138 S.W.3d at 295.

Second, the court pointed to evidence that Central did not train Taylor or his employees, or monitor the training Taylor provided. But there was no evidence Central retained a right to control training of Taylor's employees. While Central instructed Taylor to use lock-out and tag-out safety procedures, that did not impose on Central a duty to monitor compliance; an owner that provides training materials to an independent contractor is not liable if the latter fails to use them.[7] If Taylor never instructed his employees to use these procedures (which we must presume in light of the jury's verdict), there was no evidence Central knew or approved of that omission.[8]

Third, the court of appeals pointed to evidence that Central failed to investigate Taylor's knowledge or experience in conducting this work. But there was no evidence an investigation would have uncovered a history of negligent operations, and it was undisputed that Taylor's company had cleaned out seventeen Central concrete trucks without incident over the two-year period preceding the occurrence here. Moreover, there was undisputed evidence that Central gave Taylor instructions regarding procedures to avoid an accident like this; it was Taylor's failure to follow those instructions rather than his lack of experience that caused Islas's injury.

Finally, we disagree with Islas that because the jury found this cleaning work was "inherently dangerous" and a "peculiar risk," Central owed him a nondelegable duty to ensure the work was done safely. While the Legislature may impose a nondelegable duty by statute,[9] no statute applies here; to the contrary, a statutory agency specifically encouraged Central to delegate this work to an independent contractor. And while Texas courts recognize a number of nondelegable duties owed to one's own employees,[10] they have recognized very few such duties with respect to nonemployees, including the employees of an independent contractor.[11]

More important, Texas courts have found very few activities so inherently dangerous as to impose a nondelegable duty.[12] As the jury was instructed

7. *Khan*, 138 S.W.3d at 293–94.

8. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex.2001); *Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469, 470 (Tex.1985) (per curiam).

9. *See MBank El Paso, N.A. v. Sanchez*, 836 S.W.2d 151, 153 (Tex.1992).

10. *See, e.g., Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391–92 (Tex.1997) (noting nondelegable duty to hire competent coemployees); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996) (noting nondelegable duty to provide safe workplace); *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 923–24 (Tex.1981) (noting nondelegable duty to provide safety regulations for employees); *see also Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 401 (Tex.1934).

11. *See, e.g., Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex.2006) (declining to recognize "personal character exception" imposing liability for tortious acts of independent contractor performing security services); *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 949 (Tex.1998) (refusing to impose nondelegable duty on hospitals for malpractice of emergency room physicians); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 438 (Tex.1997) (declining to adopt Restatement's sections providing liability for "inherently dangerous" products); *Leitch*, 935 S.W.2d at 118 (holding corporate officers individually had no nondelegable duty to provide safe workplace).

12. *See, e.g., MBank*, 836 S.W.2d at 159 (Hecht, J., dissenting) (citing Texas courts that have refused to characterize use of heavy equipment, inflammable materials, electrical work, blasting, and refinery operations as "inherently dangerous" activities); *Abalos v. Oil Dev. Co. of Texas*, 544 S.W.2d 627, 631 (Tex. 1976) (finding no evidence oil well was inherently dangerous); *Roosth & Genecov Prod. Co. v. White*, 152 Tex. 619, 262 S.W.2d 99, 101 (Tex.1953) (finding no evidence oil derrick was inherently dangerous) *overruled on other*

here,[13] inherently dangerous activities are generally those that are dangerous in their normal, nondefective state.[14] This case, by contrast, involves repairs rather than normal nondefective use. Virtually every machine—from small appliances to heavy equipment—can cause serious injury if accidentally activated while a repairer's fingers, limbs, or body are inside it. Adopting Islas's theory would impose a nondelegable duty on every person in Texas who hires someone to make repairs, thereby rendering them liable for every injury that might occur in the course thereof. We decline to adopt so sweeping a change in Texas law.

Accordingly, we reverse the court of appeals' judgment and render judgment for Petitioner.

grounds by Burk Royalty Co. v. Walls, 616 S.W.2d 911, 925 (Tex.1981); cf. Ricardo N., Inc. v. Turcios de Argueta, 907 S.W.2d 423, 426 (Tex.1995) (noting that duty to rescue seamen arises because "the sea is inherently dangerous").

**13.** The jury received the following instruction: "An 'inherently dangerous activity' is work which will probably result in injury to a third person or the public as the activity is dangerous in its normal or nondefective state. An instrumentality is inherently dangerous only if it is dangerous in its normal or non-defective state."

**14.** Roosth, 262 S.W.2d at 101.