COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-08-096-CV

 

 

CHARLES LAMAR BEDINGHAUS                                            APPELLANT

 

                                                   V.

 

ANDREA L. ADAMS                                                                APPELLEE

 

                                              ------------

 

            FROM THE 362ND
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  Introduction

In three issues, Appellant Charles Lamar
Bedinghaus asserts that the trial court erred in granting a family violence protective
order against him.  We affirm.








                              II.  Factual and Procedural History

Sixty-seven-year-old Bedinghaus and Appellee
Andrea L. Adams dated for approximately ten months.  Six months after the relationship ended,
Adams filed an application for a protective order against Bedinghaus.  Adams provided evidence that Bedinghaus took
the following actions:

$                  
Sent 600 to 800 emails or text messages to Adams after they broke up.

 

$                  
Sent a text to Adams saying, AJust don=t ever relax because that=s when I will get my
chance and get you I will . . . . I=ll always be around, close, waiting for my
opportunity to get even with you.@

 

$                  
Sent an email to Adams saying, ASo now you will suffer the consequences that you
so well deserve,@ A[Y]ou=ll pay for your sins,@ and AI will get you.@

 

$                  
Sent an invoice to Adams showing that he had hired and paid a private
investigator to follow her.

 

$                  
Hired a private investigator to watch Adams and faxed Adams
information from the private investigators.

 

$                  
Printed derogatory statements about Adams and sent them to her
relatives, neighbors, friends, and employer.

 

$                  
Created and/or posted blogs on the internet that referenced Adams. 

 

$                  
Obtained Adams=s telephone number after
she changed it. 

 

$                  
Threatened Adams into unblocking her email address so that he could
continue to contact her.

 








$                  
Came onto Adams=s property and staked out
the children=s home where Adams was
employed.

 

$                  
Told Adams that he saw her while she was vacationing at the Horseshoe
Casino in Bossier City, Louisiana.

 

As a result of the foregoing, Adams sought
assistance from Bedinghaus=s
family, his attorney, and the police. 
Further, Bedinghaus stated at trial that he wanted to hurt Adams as he
had been hurt and that he believed Adams Aforced
him@ to take
some of his actions by not apologizing to him.








During the hearing, the trial court found that
the threats contained in various messages constituted family violence and that
family violence had occurred in the past and was likely to be committed in the
future.  He then granted Adams=s
protective order.  See Tex. Fam.
Code Ann. '' 81.001, 85.001 (Vernon
2005).  The protective order prohibited
Bedinghaus, with respect to Adams, from (1) committing any act intended to
result in, or to constitute a threat that reasonably places her in fear of,
physical harm, bodily injury, assault, or sexual assault; (2) communicating
directly with her or with members of her family in a threatening or harassing manner,
including the internet; (3) communicating a threat against her through any
person; (4) communicating with her in any manner, including but not limited to
electronic communications; (5) engaging in conduct to harass, annoy, alarm,
abuse, torment, or embarrass; (6) going to or near her residence or place of
employment or business; and (7) possessing a firearm or ammunition.  The court also made seventeen findings of
fact, including the following that Bedinghaus challenges:

5. Respondent, Charles
Lamar Beginghaus, has committed acts that were threats that reasonably placed
Applicant, Andrea L. Adams, in fear of imminent physical harm, bodily injury,
or assault.

 

6. After termination of
the parties= dating relationship,
Respondent, Charles Lamar Bedinghaus repetitively contacted Applicant, Andrea
L. Adams, through telephonic and electronic communication.  Applicant requested that Charles Lamar
Bedinghaus stop his contact but Charles Lamar Beginhaus did not stop that conduct.

 

7. Respondent, Charles
Lamar Beginghaus, contacted an ex-husband, an employer, family and friends of
Andrea L. Adams and made derogatory statements about Andrea L. Adams.

 

8. Respondent, Charles
Lamar Bedinghaus, compiled derogatory statements about Andrea L. Adams and
publicly posted them on his Internet blog, where they were available to the
public.

 

9. Between the date of
service of the initial protective order on Respondent, Charles Lamar
Beginghaus, and the date of the hearing on January 18, 2008[,] on the
application for a protective order, Respondent, Charles Lamar Bedinghaus,
continued to contact Applicant, Andrea L. Adams.

 

10. The protective order
hearing was conducted over the course of two hearing dates, those being January
18, 2008[,] and February 14, 2008.  When
the Court recessed the case on January 18, 2008, the Judge instructed both
parties in open court not to contact the other party.  During the recess between January 18, 2008[,]
and February 14, 2008, Respondent, Charles Lamar Bedinghaus, violated the Court=s instructions and
contacted the Applicant.

 








11. Family violence is
likely to occur in the future.

 

This appeal by Bedinghaus followed.

                              III.  Legal and Factual Sufficiency

In his first two issues, Bedinghaus complains
that the trial court erred by granting the family violence protective order
because the evidence is legally and factually insufficient to support the
order.

A.  Standard of Review








We may sustain a legal sufficiency challenge only
when (1) the record discloses a complete absence of evidence of a vital fact;
(2) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence
establishes conclusively the opposite of a vital fact.  Uniroyal Goodrich Tire Co. v. Martinez,
977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, ANo Evidence@ and AInsufficient
Evidence@ Points of Error, 38
Tex. L. Rev. 361, 362B63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.  Cent. Ready Mix Concrete Co. v.
Islas, 228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is
factually insufficient to support a finding, we set aside the finding only if,
after considering and weighing all of the evidence in the record pertinent to
that finding, we determine that the evidence supporting the finding is so weak,
or so contrary to the overwhelming weight of all the evidence, that the answer
should be set aside and a new trial ordered. 
Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986) (op. on
reh=g); Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); In re King=s Estate, 150
Tex. 662, 244 S.W.2d 660, 661 (1951).

B.  Family Violence

Under the Texas Family Code, Afamily
violence@ is
defined to include Adating violence,@ which
in turn is defined as 

an act by an individual
that is against another individual with whom that person has or has had a
dating relationship and that is intended to result in physical harm, bodily
injury, assault, or sexual assault or that is a threat that reasonably
places the individual in fear of imminent physical harm, bodily injury,
assault, or sexual assault, but does not include defensive measures to protect
oneself.

 








Tex. Fam. Code. Ann. ''
71.004(3), 71.0021(a) (Vernon 2005) (emphasis supplied).  Because of the disjunctive Aor@ between
the two phrases of the Adating violence@
definition, that term includes a threat without an actual act of violence.  Further, the definition implies that the Athreat@ depends
upon the reasonable belief of the person who is the object of the threat.  See id. ' 71.0021(a).

Here, Adams gave the following uncontroverted
testimony that Bedinghaus=s actions placed her in fear of
imminent physical harm:

A. . . . I=m afraid.  I never know from one minute to the next. 

 

. . .
. 

 

Q.  And you believe that to be a threat of
physical violence?

 

A.  I do.

 

. . .
. 

 

Q.  Does the fact that you know he has firearms
frighten you?

 

A.  Yes, it did.

 

. . . . 

 

Q.  But in addition to that, were there a number
of other things that he threatened to do?

 

A.  Yes.

 

Q.  And did some of those cause you to be in fear
of physical harm?

 

A.  Yes.

 

Q.  Were you afraid that you might suffer bodily
injury?

 

A.  Yes.








Q.  Were you concerned that he might assault you?

 

A.  Yes.

 

Q.  Did email refer to he would get to you -- I=m going to paraphrase
slightly, but he would get to you when you least expected it?

 

A.  Yes, it did.

 

Q.  And refer to that it would be in the future?

 

A.  Yes.

 

The record, as previously partially recounted, is
replete with reasonable bases for her fear, including being followed by private
investigators hired by Bedinghaus; Bedinghaus having been on her property and
at her place of work; and Bedinghaus=s emails
stating AI [will]
get even with you for what you did,@ AI will
get you real good one day when you are least expecting it,@ AI will
always be around, close, waiting for my opportunity to get even with you.  It will happen . . . you can bank on it . . .
when you least expect it,@ A[Y]ou
and Benny Boy are both going to deeply regret the antics that you [guys] tried
to pull,@ A[T]his
is not going to end well,@ AIf you
even begin to think that you can=t be
hurt anymore than you have been  . . .
then, you=re very naive and innocent,@ and AI hope
you [don=t] choke
on your turkey.  Santa will come early at
your house this year.@








Bedinghaus did not deny at the hearing that he
intended to place Adams in fear of imminent physical harm; rather, he argued
that he did not intend to cause her actual physical harm.  This, however, is not the reasonableness test
previously articulated.  Further,
although he contends that his statements are taken out of context and often
refer to court action, not physical violence, his interpretation of his actions
and their reasonableness is likewise not the test previously discussed.

Based on the foregoing, considering the evidence
favorable to the court=s findings if a reasonable
factfinder could and disregarding evidence contrary to the finding unless a
reasonable factfinder could not, we hold that there is legally sufficient
evidence to support the court=s
findings that family violence had occurred and was likely to occur in the
future.  Likewise, after considering and
weighing all of the pertinent evidence, we cannot say that the evidence
supporting the court=s findings is so weak or
contrary to the overwhelming weight of all the evidence that it should be set
aside and a new trial ordered.  We
overrule Bedinghaus=s first and second issues.[2]








                                          IV.  Conclusion

Having
overruled Bedinghaus=s dispositive issues, we
affirm the trial court=s judgment.

 

 

BOB
MCCOY

JUSTICE

 

PANEL: LIVINGSTON and
MCCOY, JJ.; and WILLIAM BRIGHAM, J. (Senior Justice, Retired, Sitting by
Assignment).

 

DELIVERED: February 5,
2009











[1]See Tex. R. App. P. 47.4.





[2]We need not address Bedinghaus=s third issue, in which he
complains that the trial court abused its discretion by granting the protective
order, because this court reviews such challenges for sufficiency of the
evidence, measured by legal and factual sufficiency contentions.  See Schaban‑Maurer v. Maurer‑Schaban,
238 S.W.3d 815, 823 (Tex. App.CFort Worth 2007, no pet.); see also Tex. R. App. P.
47.1.