

# NUMBER 13-13-00284-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

W.D. (BILL) GAGAN D/B/A
COUGAR MARINE USA,                                              Appellant,

v.

PATRICK MURPHY,                                                 Appellee.

## On appeal from the County Court at Law No. 3
## of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Benavides
### Memorandum Opinion by Justice Benavides

This is a breach of contract case that was tried to the bench. By four issues, W.D. (Bill) Gagan d/b/a Cougar Marine USA ("Gagan") appeals the trial court's judgment rendered in favor of appellee Patrick Murphy in the amount of $302,369.32, plus $5,000 in attorney's fees. Gagan asserts that (1) Murphy did not have capacity to bring this

breach of contract action; (2) Murphy, as an individual, is not entitled to the damages awarded; (3) the award of attorney's fees was unsupported; and (4) the trial court utilized an incorrect measure of damages. We reverse and render.

## I. BACKGROUND

Gagan is in the business of repairing, refinishing, and refurbishing boats. Murphy is a captain for a deep-sea fishing charter company known as Captain Murphy's Charter Service, Inc. (the Company) located on South Padre Island, Texas.

On November 6, 2006, Murphy wanted a "total refit" of one of the Company's fishing boats known as "The Thunderbird." Murphy explained that a "total refit" meant that the hull of the boat would remain "but everything else [would] be replaced" including new cabins and decks. Murphy contacted Gagan to evaluate the potential project. Gagan inspected the Thunderbird and sent Murphy a follow-up letter asking Murphy several technical questions about the boat proposing a schedule for the refurbishment.

On November 28, 2006, Gagan sent a detailed written price quotation in the amount of $96,804.31 for the Thunderbird's rebuild addressed to Murphy and his brother Steven, who is also a captain with the Company. On February 28, 2007, Gagan sent a revised itemized price quotation to Murphy and Steven. This quotation totaled $96,555.07. In this letter, Gagan indicated that pre-payment of $69,000.86 would be required "at the beginning" of the project to start work. According to Murphy, Gagan estimated that the project would be completed in forty-five days.

On March 21, 2007, the Company paid Gagan $69,000 to start working on the Thunderbird. The Company then paid Gagan the following invoices related to his work on the Thunderbird: (1) $5,041.11 on April 24, 2007; (2) $6,795.78 on May 4, 2007; (3)

$3,377.14 on May 11, 2007; (4) 2,744.14 on May 21, 2007; (5) $5,025.51 on June 19, 2007; (6) $7,682.89 on June 26, 2007; (7) $4,381.58 on July 6, 2007; (8) $2,727.90 on July 9, 2007; (9) $5,352.94 on July 22, 2007; (10) $2,882.16 on July 30, 2007; (11) $4,054.92 on August 6, 2007; and (12) $4,919.28 on October 7, 2007.   Gagan stopped working on the Thunderbird in August 2007.   Murphy testified that the Company had paid Gagan $123,985.61 for the Thunderbird project.   According to Murphy, the Thunderbird was still not running in August 2007, and Gagan stopped working on the project.

Murphy testified that he, along with others, eventually finished the remaining work on the Thunderbird without Gagan.   The Company paid $29,100 in labor costs plus $47,897.92 in materials to various suppliers in order to finish the project.   Murphy also stated that the Company still owed suppliers for materials used on the Thunderbird project.   During cross-examination, Murphy generally testified to personally losing money from the Thunderbird project such as "everyday living [and] everyday life costs" as a result of not being able to work.

In 2008, Murphy individually sued Gagan for breach of contract.   Murphy alleged that Gagan breached their agreement by failing to "deliver the product pursuant to the contract terms.   Murphy alleged the following itemized damages totaling $302,369.32: (1) $27,721.66 for overpayment to Gagan; (2) $153,400.00 in the Company's lost income from not utilizing the Thunderbird; (3) $29,100 in wages and $47,897.92 in materials and work paid to finish the Thunderbird project; (4) $25,448.57 in outstanding invoices owed to suppliers for finishing the Thunderbird project; (5) $643.62 in miscellaneous receipts; and (6) $18,157.55 in miscellaneous supplies.   After a one-day

3

bench trial,[1] the trial court found in favor of Murphy and awarded him damages totaling $302,369.32. This appeal followed.

## II. ANALYSIS

Because Gagan's second issue is dispositive to this appeal, we will address it first.[2] *See* TEX. R. APP. P. 43.3, 47.4. By Gagan's second issue, he asserts that the evidence is legally and factually insufficient to support the trial court's finding of damages to Murphy individually.

### A. Standard of Review and Applicable Law

In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). When an appellant attacks the legal sufficiency of an adverse finding on an issue for which it did not have

---

[1] Gagan acted pro se during the trial proceedings. According to Gagan's representations to the trial court, his attorney, Lemuel Lopez, died suddenly prior to trial. Gagan stated that he was unable to find a replacement attorney, so he acted pro se at trial. Gagan is, however, represented by counsel on appeal.

[2] By his first issue, Gagan asserts that "the [trial] Court's findings that one individual (Patrick Murphy) had standing to bring the suit is without sufficient evidence or alternatively, against the great weight and preponderance of the evidence." Without standing, a court lacks subject matter jurisdiction to hear the case. *Tex. Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). On the other hand, Texas courts have held "a challenge to a party's privity of contract is a challenge to capacity, not standing." *John C. Flood of DC, Inc. v. Super Media, L.L.C.*, 408 S.W.3d 645, 651 (Tex. App.—Dallas 2013, pet. denied) (citing *Landry's Seafood House–Addison, Inc. v. Snadon*, 233 S.W.3d 1, 6–7 (Tex. App.—Houston [14th Dist.] 2010, pet. denied)); *see also Yasuda Fire & Marine Ins. Co. v. Criaco*, 225 S.W.3d 894, 898 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (noting that ability of an entity that is not a party to a contract or a third-party beneficiary of the contract to sue "goes to the merits and does not deprive courts of jurisdiction"). In his first issue, Gagan argues specifically that there is insufficient evidence that Murphy, individually, was a party to the contract. We therefore construe Gagan's first issue as one challenging Murphy's capacity. *See John C. Flood of DC, Inc.*, 408 S.W.3d at 651. Because the issue of capacity does not deal with the trial court's subject matter jurisdiction, we need not address it first. *See* TEX. R. APP. P. 47.4; *see also Tex. Ass'n of Bus.*, 852 S.W.2d at 443–44 (explaining that standing is a threshold inquiry).

the burden of proof, the appellant must demonstrate that there is no evidence to support the adverse finding. *See City of Keller*, 168 S.W.3d at 810. We will sustain a no evidence point of error when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810–11; *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998).

In reviewing a factual-sufficiency challenge to a finding on an issue on which the appellant did not have the burden of proof, we set aside the verdict only if the evidence that supports the jury finding is so weak as to make the verdict clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We must examine both the evidence supporting and that contrary to the judgment. *Editorial Caballero, S.A. de C.V. v. Playboy Enter., Inc.*, 359 S.W.3d 318, 329 (Tex. App.—Corpus Christi 2012, pet. denied). Additionally, the factfinder is the sole judge of witnesses' credibility, and it may choose to believe one witness over another, and we may not impose our own opinion to the contrary.

To prevail on a breach of contract action, the plaintiff must prove the following elements: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *See Keszler v. Mem'l Med. Ctr. of E. Tex.*, 105 S.W.3d 122, 128 (Tex. App.—Corpus Christi 2003, no pet.).

5

**B. Discussion**

Gagan challenges the sufficiency of the evidence supporting Murphy's fourth element in his breach of contract action: whether Murphy, individually, was damaged as a result of Gagan's purported breach. After reviewing the record, we conclude that the evidence is legally insufficient to support the trial court's award of damages to Murphy individually.[3]

Murphy filed his lawsuit against Gagan in Murphy's individual capacity—that is, not as a representative, or on behalf of, the Company. Murphy also admitted that the Thunderbird was owned by the Company. Additionally, it is undisputed that all of the invoices from March 2007 to October 2007 were paid from the Company's checking account. Murphy also testified that he does not have a personal bank account, as shown by the following exchange:

> [Gagan]: . . . Was that initial payment for the materials and for whatever—and for that matter, any future payments to Cougar made from your personal check or personal funds?
>
> Murphy: It was all through a—money drawn through the bank, First National Bank in McAllen.
>
> Q: But they're not from your personal account or out of your wallet, right?
>
> A: No, sir. I don't have a personal account.
>
> Q: Okay. The corporation made those payments, correct?

---

[3] After Murphy rested his case, Gagan moved for an instructed verdict on various grounds, including that the damages presented at trial were suffered by the Company rather than Murphy individually. In response, Murphy's counsel argued that the action was brought by Murphy individually because the contract was between Gagan and Murphy, individually. Furthermore, Murphy's counsel argued that Murphy's damages for lost wages were reflected by the tax returns admitted into evidence. Subsequently, the trial court denied Gagan's motion for directed verdict on all grounds.

6

A: Yes.

The trial court also awarded Murphy damages for "lost income" related to the Thunderbird's non-use. To support this claim, Murphy produced 2006, 2007, and 2008 income tax returns for the Company to show how the Company's income declined in 2007 as a result of the Thunderbird's unavailability for private deep-sea fishing charters. Murphy did not submit any of his personal income tax returns and admitted that the Company paid his salary and his bills. Furthermore, when asked what personal losses he suffered as a result of Gagan's alleged breach, Murphy testified that as a result of the breach, he was unable to pay "rent" and "basic living" expenses. Finally, Murphy testified only to the amounts that it cost in labor and materials to finish the Thunderbird project after Gagan stopped working. Finally, the Company paid the additional costs to finish the project. None of Murphy's testimony established that he personally paid for any of the costs associated with finishing the project.

After utilizing the appropriate standard of review for legal sufficiency challenges, *see Ready Mix*, 228 S.W.3d at 651, we conclude that the evidence produced at trial reveals a complete absence of evidence to show that Murphy was damaged individually as a result of Gagan's actions. All of the evidence in the record regarding the issue of damages, concerns the Company's losses, not losses to Murphy individually. For reasons not apparent from the record, the Company was not made a party to this action nor was Murphy listed as a party representing the Company. Murphy's only testimony regarding his personal damages did not quantify those damages and referenced only "basic living" expenses. This testimony, by itself, is no more than a mere scintilla to prove his personal losses, *see City of Keller*, 168 S.W.3d at 810–11, and indeed the trial

7

court did not award damages for these "basic living" claims, as evidenced by the trial court's itemized judgment awarding damages. Because damages are an essential element for recovery in a breach of contract action, *see Keszler*, 105 S.W.3d at 128, and because we conclude that no evidence supports Murphy's individual recovery for damages in this case, Murphy's breach of contract action fails as a matter of law. Gagan's second issue is sustained. Because this issue is dispositive, we need not address Gagan's remaining issues. *See* TEX. R. APP. P. 47.1.

### III. CONCLUSION

We reverse the trial court's judgment and render that Murphy take nothing.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
29th day of August, 2014.