

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-26-00038-CV

———————————————————

IN THE MATTER OF J.J.

On Appeal from the 323rd District Court
Tarrant County, Texas
Trial Court No. 323-123649-24

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

### I. Introduction

Appellant J.J. appeals from a "Judgment on Motion to Modify Disposition" in which the trial court found that he had engaged in delinquent conduct, granted the motion to modify disposition,[1] and ordered him committed to the Texas Juvenile Justice Department (TJJD) for an indeterminate period of time not to exceed his nineteenth birthday or until duly discharged. *See* Tex. Fam. Code §§ 51.03, 54.05(a). In a single issue, Appellant argues that the trial court abused its discretion by committing him to TJJD. Because the trial court did not abuse its broad discretion by committing Appellant to TJJD, we affirm.

### II. Background

### A. The Initial Offense, the Petition Regarding Delinquent Conduct, and the Judgment of Delinquency

On or about March 27, 2024, Appellant committed the offense of robbery. Relying on that offense, the State initiated the underlying case in May 2024 by filing a "Petition Regarding Child Engaged in Delinquent Conduct." On August 1, 2024, the trial court held a probable-cause hearing, found probable cause to believe that Appellant had engaged in "delinquent conduct/conduct indicating a need for

---

[1]The judgment states that the trial court granted "the petition to revoke probation," which appears to be a scrivener's error because the clerk's record does not contain a petition to revoke and because the reporter's record makes clear that the trial court held a "Motion to Modify Hearing."

supervision," and signed an order detaining him in the juvenile detention center. Two weeks later, the trial court signed an order continuing Appellant's detention.

In September 2024, Appellant entered into a "Stipulation of Evidence, Judicial Confession, and Disposition Agreement" and admitted that on or about March 27, 2024, in Tarrant County, Texas, he had committed the offense of robbery in violation of Texas Penal Code Section 29.02—a second-degree felony that constitutes delinquent conduct as defined in Texas Family Code Section 51.03(a).[2] The trial court thereafter signed a judgment of delinquency and an order placing Appellant on twelve months' probation.

### B.     Appellant's Next Offense, the State's Motion to Modify Disposition, and Appellant's Return to Detention

In August 2025, the trial court issued a directive to apprehend, stating that Appellant had engaged in delinquent conduct by committing the offense of unlawful carrying of a weapon and had violated a lawful order of the court.[3] The following month, the State filed a motion to modify disposition, alleging that Appellant had violated four probation conditions by committing a new offense, possessing a bottle of liquor, possessing a handgun, and associating with a criminal street gang. The State requested that the trial court issue an order committing Appellant to TJJD.

---

[2]*See* Tex. Penal Code § 29.02; Tex. Fam. Code § 51.03(a).

[3]On or about July 24, 2025, Appellant was arrested on two adult charges— unlawful carrying of a weapon and possession of a controlled substance (a THC vape pen).

The record includes a return attached to a directive to apprehend showing that Appellant was apprehended on November 13, 2025. The following day, the trial court signed a detention order and thereafter signed orders continuing Appellant's detention.

## C.     The Second Stipulation of Evidence

On January 7, 2026, Appellant and the State entered into a second "Stipulation of Evidence, Judicial Confession, and Disposition Agreement"[4] in which Appellant stipulated that he had violated four probation conditions. Specifically, he stipulated to the following:

> Paragraph One:  [Appellant] violated his probation by committing a new law violation, to-wit:  on or about the 24th day of July, 2025, in Tarra[n]t [Co]unty, Texas[, Appellant] did intentionally, knowingly, or recklessly carry on or about his person a handgun, and at the time of the offense, [he] was younger than 21 years of age, and was not on [his] own premises or premises under [his] control; or inside of or directly en route to a motor vehicle or watercraft that was owned by [him] or under [his] control;
>
> Paragraph Two:  [Appellant] violated his probation when on or about the 24th day of July, 2025, in Tarrant County, Texas[, he] possessed a bottle of liquor;
>
> Paragraph Three:  [Appellant] violated his probation when on or about the 24th day of J[ul]y, 2025, in Tarrant County, Texas[, he] possessed a handgun; [and]
>
> Paragraph Four: [Appellant] violated his probation when on or about the 24th day of July, 2025[,] in Tarrant County, Texas[, he]

---

[4]Although the title of the document reflects that it included a "Disposition Agreement," after the stipulations, it stated, "Recommendation:  OPEN DISPOSITION."

4

admitted to associating with members of a criminal street gang, to-wit: members of the K4K set of the Crips[.⁵]  [All caps removed for easier reading.]

## D.    The Modification Hearing

The trial court held a hearing on the State's motion to modify disposition, and at the outset, Appellant agreed that the stipulations were true.  Both sides then presented testimony.

### 1.    Testimony from the Juvenile Probation Department

Jennifer Solis, who was with Tarrant County Juvenile Probation Department and served as Appellant's field court officer, testified that Appellant was seventeen years and five months old at the time of the hearing and that the juvenile probation department had been involved in his life due to the following offenses:

- The offense of unauthorized use of a motor vehicle in 2023;

- The offense of unlawful carrying of a weapon (a handgun) in April 2024 for which he completed "a conditional predisposition supervision" and then was placed on probation for a year;

- The offense of terroristic threat causing fear or imminent bodily injury— an offense during which Appellant threatened someone with a gun;⁶ and

- The offense of robbery in September 2024 during which a handgun was used.

---

⁵These were the same four violations alleged by the State in its motion to modify disposition.

⁶Solis did not testify regarding the date of this offense.

Appellant was arrested again on July 24, 2025, and pleaded guilty to the adult offense of unlawful carrying of a weapon (a handgun) and was placed on deferred-adjudication community supervision for two years.[7] Solis noted that at the time of that offense, Appellant possessed alcohol and a THC vape pen. Solis testified that it was a violation of Appellant's community-supervision conditions for him to possess alcohol and to use THC.

Solis testified regarding the programs and services that Appellant was offered. Appellant twice successfully completed electronic monitoring (EM) in 2024. His other success was the completion of multisystemic therapy (MST). Appellant was offered the Youth Advocate Program in June 2024, but the outcome was a failure to comply because his mother (Mother) did not follow through on the appointments that were set up. Also, Appellant had received one major infraction and ten other infractions during the four times that he was in detention and had tested positive four times out of twenty-one drug tests.[8]

The State questioned Solis about Appellant's gang membership. The State showed her a document, and she agreed that it showed that Appellant had self-admitted to being a member of the criminal street gang K4K, which is a segment

---

[7]The record includes the related order of deferred adjudication. Attached to that order is Appellant's judicial confession. Those documents were admitted without objection at the modification hearing.

[8]The social history report dated December 29, 2025, shows that Appellant had tested positive for "marijuana (THC)" five times out of twenty-two tests that were given from March 28, 2024, to November 13, 2025.

6

of the Crips. When asked what the juvenile probation department could offer to deal with Appellant's gang involvement, Solis stated that the "Comin' Up Program" provides needs-based services and activities to reduce gang violence and that Appellant could participate until he turned eighteen. On cross-examination, Solis testified that Appellant had never admitted to her that he is a gang member, though she agreed that the police report in the unlawfully-carrying-a-weapon case reflected that he had told the police that his family members belong to that gang. Solis further agreed that it was premature to testify that Appellant is a gang member because she did not have specific information about that.

Solis said that Appellant lived with Mother and his siblings. Solis described Mother's involvement with the juvenile probation department's requirements as "inconsistent." According to Solis, Mother had been proactive with Appellant's mental-health issues, and he had been compliant.[9] But Solis admitted that Mother had not followed through with taking Appellant to get an evaluation for his THC use, despite referrals to a substance-abuse treatment program on two occasions, and had not helped him complete the Youth Advocate Program. Solis opined that Appellant would not be successful on probation if he were returned to Mother's care.

Solis testified that the resource staffing committee's recommendation was for Appellant to remain on probation until his eighteenth birthday. She suggested that Appellant could live with T.C. (Maternal Uncle) even though no background check

_____

[9]Solis said that Appellant had been diagnosed with ADHD and PTSD.

had been completed on him. Solis said that Maternal Uncle would be a suitable placement for Appellant because Maternal Uncle is a father and lives with his girlfriend in Crowley thus moving Appellant away from his current environment; Maternal Uncle had graduated college and worked in security; and he "seem[ed] to be an appropriate caregiver, from what [the juvenile probation department could] see."

Solis agreed that it was true that Appellant (1) had been placed on probation in 2024 for a gun-related offense—unlawful carrying of a weapon in April 2024, (2) had committed a second gun-related offense when he committed the robbery in September 2024, (3) had committed a third gun-related offense for unlawful carrying of a weapon in July 2025, and (4) was a member of a street gang. In light of that criminal history, the State asked her to explain why the trial court should return Appellant to the community, and she responded,

> I think that [Appellant] in an appropriate environment and with the right amount of parental engagement and supervision, I think he definitely has a fair chance at returning back to his normal life. I definitely see someone who wants [an] opportunity to change. Since I've known him and worked with him, he has been very open to change[,] and he's able to admit his wrongs. He is consistent with taking his medication when he [is] at home. He has successfully completed both times on the EM. He has successfully completed MST. I think -- with the right services in place, I think that [Appellant would be] able to turn his life around.

The State then asked follow-up questions:

> Q. So was [the] juvenile probation [department] not providing him -- those services to him before he picked up this third gun offense?

8

A. They were. And for the most part, prior to picking up that adult offense, he had done well, and then he was missing for three months . . . .

Q. And by doing well, [you] mean picking up a new gun offense, drinking alcohol, smoking weed[,] and joining a gang; is that right?

A. (Nonverbal response.)

Solis remained steadfast in her belief that Appellant could be successful on adult probation and noted that she could continue to supervise him, providing an additional resource if he were on probation. But she agreed on redirect that Appellant had only done well in detention, where he had a structured environment away from guns, drugs, and gangs.

The trial court questioned Solis regarding what interventions would be put into place to prevent Appellant from acquiring another firearm if the trial court continued his probation:

> First off, maybe having no access to a phone. I think having no access to a phone. I think removing him from his current environment and being in a new environment, that would remove him from his current negative peers. The programs -- the Comin' Up Program, that's a gang intervention program[10] that could assist with helping [him], especially if he has family members who are gang members. Accountability, so placing him on the EM locked down would also be something that could potentially be very helpful.
>
> I think having a male role model in his life, his uncle, would also be incredibly beneficial, seeing that his uncle has shown and demonstrated that he can step up. He's willing to step up, and he's willing to take on that role of being [Appellant's] male role model.

---

[10]Solis later explained that the program includes a class about gun ownership and gun possession.

9

THE COURT: Okay. So then my next question is, why didn't you do this a year ago?

[Solis]: We wanted to give the mother an opportunity to demonstrate that she would be able to provide the level of support and care that [Appellant] needed.

THE COURT: So your goal was to give the mom a chance and not [Appellant]?

[Solis]: They both deserve a chance and --

THE COURT: What -- are y'all supervising Mom?

[Solis]: No, we're not.

THE COURT: So if these are things that [Appellant] needs, why didn't y'all do this a year ago? And it seems like your answer is because you wanted to supervise Mom.

[Solis]: No. I did not know about the uncle. I didn't know that he had a relationship with him. . . .

THE COURT: So what about the gang intervention? Did y'all do that a year ago?

[Solis]: We did not.

THE COURT: What about the locked down EM, did y'all do that a year ago?

[Solis]: We did do home detention.

THE COURT: But he's on probation for a gun offense, and so one of the priorities should be keeping -- removing access to firearms. Did y'all -- did [the juvenile probation department] take away his phone a year ago?

[Solis]: I believe Mom did take the phone away for a certain amount of time. I just don't remember how long that was.

10

The trial court asked what Appellant did "right" during probation, and Solis said that he had successfully completed MST to help him with his anger towards Mother, had twice successfully completed EM, and had reenrolled in school after absconding from late July 2025 to late October 2025. When asked which probation terms Appellant had successfully completed, Solis responded, "None."

The State asked Solis to clarify that the juvenile probation department's plan for preventing Appellant, who had three gun offenses, from getting a gun was for him to go to a class, to promise not to play with guns, and to have a male role model in his life. And she agreed that the male role model—Maternal Uncle—did not have legal custody of Appellant and had no authority to make him stay with him. She further agreed that Appellant had admitted during his probation-intake interview that he was in a gang and that despite knowing that, the juvenile probation department had not offered him any kind of gang-related services.

During Appellant's case in chief, he recalled Solis and inquired more about the documentation showing that he was a gang member. She said that she had looked at the system and had found out that Appellant's field officer had changed the answer "no" to "yes" regarding whether Appellant was in a gang "simply based off the police report."

### 2. Maternal Uncle's Testimony

Appellant also called Maternal Uncle to testify. He said that he was soon to be married, that he had four children ages four and under, and that he was working as a

11

security guard but was pursuing a career in the police field. Maternal Uncle believed that he could guarantee that Appellant would not get a fourth gun-related charge but admitted that he could not prevent Appellant from leaving his house. When the State listed off the names of various people, including a gang member whom Appellant had been with the night that he was arrested for his most recent offense, Maternal Uncle did not know any of the people with whom Appellant associated.

Maternal Uncle followed Appellant on Instagram but did not see his post about "C-Day." Maternal Uncle was not aware that term was used by the Crips to refer to a birthday or that the Crips do not use the letter B (e.g., b-day) because that refers to their rivals—the Bloods. Maternal Uncle did not know why Appellant would use gang terms when posting on Instagram.

### 3. The Trial Court's Concerns, Findings, and Disposition

After hearing closing arguments, the trial court set forth its concerns about Appellant before announcing the disposition:

> So the [c]ourt, having considered all of the competent evidence, will find that the child violated lawful and reasonable conditions -- terms and conditions of his probation.
>
> [Appellant], at the end of the day, you're not a child. When you abscond like that for three months, [the juvenile probation department] can't supervise you. You're there with another gun. You're on probation for robbery. You used the gun, and you just won't stay away from guns.
>
> You have such a great support system around you, other than your mother, and you just don't care. You don't use it. So you'll live on

the streets; you'll couch surf; you'll do whatever you want, but you're not going to be supervised.

And you admitted to having another gun in the adult courts. And so at that point, the fact that you're not around to be supervised and you'll still go and acquire guns and take possession of guns, there is nothing I can do to keep the community safe, as long as you're in the community. All right.

So I'm committing you to [TJJD] for an indeterminate commitment. . . .

. . . .

. . . You're going around with a gun. Your next mess-up[] could be somebody being dead. All right. That's what I'm worried about. And it could be you. All right. A part of this could be saving your life, instead of somebody else's. So your obsession with guns is just -- it's that -- that's where I'm drawing the line. The fact that you absconded while you're on probation, that's a huge part, too. You can't run off.[11]

The trial court's commitment order included the following findings:

The [c]ourt finds it is in [Appellant's] best interests to be placed outside [his] home, that reasonable efforts were made to prevent or eliminate the need for [his] removal from the home and to make it possible for [him] to return to [his] home; that [Appellant], in [his] home[,] cannot be provided the quality of care and level of supervision that [he] needs to meet the conditions of probation and that [he] has behavioral health or other special needs that cannot be met with the resources available in the community. . . .

It further appears to the [c]ourt that the best interest of [Appellant] and the best interest of society will be served by committing

---

[11]Appellant explained to the trial court that his probation officer had told him that she was not going to be his probation officer anymore and that he never met the new probation officer. The trial court responded, "Because you ran away." Appellant said that he had never run away and that he had been with his "baby momma." The trial court stated that Appellant had not been where he was supposed to be, which was a problem.

him to the care, custody[,] and control of [TJJD], for the following reasons:

> 1) There are no facilities, services[,] or programs available which would meet the needs of [Appellant];

> 2) The [c]ourt finds that the educational needs of [Appellant] can be met by [TJJD]; [and]

> 3) [Appellant] has been found by the [c]ourt to have violated [the four stated probation conditions].

This appeal followed.

### III. Standard of Review

We review a trial court's decision to modify a juvenile disposition for an abuse of discretion. *See In re J.P.*, 136 S.W.3d 629, 632–33 (Tex. 2004); *In re R.R.*, Nos. 02-24-00360-CV, 02-24-00361-CV, 2025 WL 421222, at *3 (Tex. App.—Fort Worth Feb. 6, 2025, no pet.). A juvenile court has broad discretion to determine a suitable disposition for a child who has been adjudicated as having engaged in delinquent conduct. *R.R.*, 2025 WL 421222, at *3 (citing *In re J.D.P.*, 85 S.W.3d 420, 426 (Tex. App.—Fort Worth 2002, no pet.)). This is particularly true in proceedings to modify a juvenile's earlier disposition. *Id.* (citing *In re D.R.A.*, 47 S.W.3d 813, 815 (Tex. App.—Fort Worth 2001, no pet.)).

A juvenile court abuses its discretion when it acts unreasonably or arbitrarily—without reference to any guiding rules or principles. *Id.* (citing *In re C.J.H.*, 79 S.W.3d 698, 702 (Tex. App.—Fort Worth 2002, no pet.)). It does not abuse its discretion simply by basing its decision on conflicting evidence. *In re D.T.*, No. 02-20-00312-

14

CV, 2021 WL 5028769, at *1 (Tex. App.—Fort Worth Oct. 28, 2021, no pet.) (citing *In re C.C.*, No. 02-17-00216-CV, 2018 WL 1865804, at *3 (Tex. App.—Fort Worth Apr. 19, 2018, no pet.)). We will not conclude that the juvenile court abused its discretion so long as some evidence of substantive and probative character exists to support its decision. *Id.*

In a disposition-modification proceeding, the burden of proof is by a preponderance of the evidence. Tex. Fam. Code § 54.05(f); *In re A.K.*, No. 02-24-00144-CV, 2024 WL 4705124, at *4 (Tex. App.—Fort Worth Nov. 7, 2024, no pet.). We apply the civil standards of review for the legal and factual sufficiency of the evidence[12] to support a disposition decision. *D.T.*, 2021 WL 5028769, at *1 (citing *In*

---

[12]We may sustain a legal-sufficiency challenge only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

When reviewing a factual-sufficiency challenge under the civil standard of review, we set aside the finding at issue only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715

15

*re B.R.*, No. 02-19-00328-CV, 2020 WL 3369556, at *2 (Tex. App.—Fort Worth June 18, 2020, no pet.)). In conducting our review, we engage in a two-pronged analysis: (1) did the juvenile court have sufficient information upon which to exercise its discretion, and (2) did it err in its application of discretion? *Id.*

## IV. Applicable Law

We recently set forth the law applicable to a modification of a juvenile disposition:

> Violating a single condition of probation is sufficient for a trial court to modify a juvenile's prior disposition. *In re J.Y.*, No. 02-17-00092-CV, 2017 WL 3298301, at *3 (Tex. App.—Fort Worth Aug. 3, 2017, no pet.) . . . (citing *In re S.G.V.*, No. 04-05-00605-CV, 2006 WL 923576, at *3 (Tex. App.—San Antonio Apr. 5, 2006, no pet.) . . . ). A trial court may commit a juvenile to . . . TJJD if it finds that (1) it is in the child's best interest to be placed outside the child's home[;] (2) reasonable efforts have been made to prevent or eliminate the need for the child's removal from the child's home and to make it possible for him to return home[;] and (3) the child, in the child's home, cannot be provided the quality of care and level of support and supervision needed to meet the conditions of probation. Tex. Fam. Code . . . § 54.04(i)(1). . . .
>
> The trial court "is not required to exhaust all possible alternatives before sending a juvenile to . . . TJJD." *In re K.H.*, 682 S.W.3d 567, 576 (Tex. App.—Houston [1st Dist.] 2023, pet. denied); *see In re J.R.C.*, 236 S.W.3d 870, 875 (Tex. App.—Texarkana 2007, no pet.) ("The Texas Family Code permits a trial court to decline third and fourth chances to a juvenile who has abused a second chance." (citing *J.P.*, 136 S.W.3d at 633)).[13] Generally, a trial court does not abuse its discretion by

S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

[13]"In other parts of the Family Code, the best interests of children are often paramount, but in the Juvenile Justice Code, the best interests of children who engage in serious and repeated delinquent conduct are superseded to the extent they conflict

committing a juvenile to . . . TJJD "when a delinquent juvenile has engaged in some type of violent activity that makes the juvenile potentially dangerous to the public." *K.H.*, 682 S.W.3d at 576; . . . *B.R.*, . . . 2020 WL 3969556, at *6 . . . .

*R.R.*, 2025 WL 421222, at *4–5.

## V. Analysis

In his sole issue, Appellant argues that the trial court abused its discretion by committing him to TJJD "because the decision to commit him was without reference to any guiding rules or principles." Specifically, Appellant contends that the State did not present evidence to substantiate its claims of his participation in multiple gun incidents, he raises double-jeopardy arguments, and he places much reliance on the probation department's recommendation to continue probation. As explained below, Appellant's arguments fail.

As to Appellant's contention that the State did not present evidence to substantiate its claims of his participation in multiple gun incidents, we first note that he signed written stipulations agreeing that he had violated his probation conditions by possessing a handgun on July 24, 2025. Appellant's admission is legally and factually sufficient to support the trial court's finding that he had violated his probation. *See In re M.S.K.*, No. 11-13-00045-CV, 2014 WL 4261620, at *2 (Tex. App.—Eastland Aug. 21, 2014, no pet.) ("Appellant's admission that she violated the terms and conditions of her probation, along with her agreement that the State's

with public safety." *In re R.S.*, No. 02-22-00165-CV, 2022 WL 17494602, at *3 n.4 (Tex. App.—Fort Worth Dec. 8, 2022, no pet.) (citing *J.P.*, 136 S.W.3d at 633).

representation of the evidence was true, is both legally and factually sufficient to support the trial court's finding that she violated her probation."); *see also J.Y.*, 2017 WL 3298301, at *3 (stating that a single probation violation is sufficient for a trial court to modify a juvenile's prior disposition).

Because Appellant's firearm argument also attacks whether the trial court's decision to commit him to TJJD was in his best interest, we further note that the record contains two social history reports showing that his behavior had escalated as demonstrated through his repeatedly engaging in firearm offenses and that he was at high risk for reoffending. During the modification hearing, Appellant's attorney questioned Solis about the social history reports that she had signed, but Appellant made no mention that those reports reflect that police found a Beretta Nano 9mm handgun in his waistband on March 28, 2024. Those same social history reports also describe the March 27, 2024 robbery in which Appellant was identified "as the one who was grabbing the 'money and other things'" from the victim while another suspect held the gun to the victim's ribs; thus, Appellant participated in an offense where a firearm was exhibited or displayed. Because there is no requirement that a social history report be introduced into evidence before the trial court may consider it and because a social history report is not subject to strict application of the rules of evidence, *see In re D.W.D.*, No. 2-03-015-CV, 2004 WL 868681, at *1 (Tex. App.—Fort Worth Apr. 22, 2004, no pet.), the trial court did not abuse its discretion by considering Appellant's history with firearms and using that information to conclude

18

that it was in his best interest to be placed outside the home and committed to TJJD.

Appellant then attacks his commitment to TJJD on double-jeopardy grounds, claiming that "this modification of [his] juvenile probation would not have been brought except for his involvement with the adult criminal system as his juvenile probation was about to expire" and that the modification was "an unnecessary multiple prosecution." Appellant makes this argument but then states that "[e]xcept for the fact that the juvenile proceeding was a modification (a revocation in the adult system)[,] the parallel prosecution of the same handgun possession case would be double jeopardy" and that "the modification hearing did not determine guilt and therefore [did not] involve double jeopardy." As noted by the State, "That observation does not purport to offer the [c]ourt a basis for reversing the disposition of this case." We agree and, like the State, "decline[] to engage in what would be an academic discussion of inapplicable law." *See* Tex. R. App. P. 47.1.

Appellant concludes his sole issue by heavily relying on Solis's testimony, arguing that "[h]er testimony clearly established that the preponderance of the evidence weigh[]ed against the placement of [Appellant] at TJJD." Appellant points to the portion of Solis's testimony that is quoted above in which she claimed that he would be able to turn his life around, as well as her testimony that he and Mother had been very consistent with his mental-health treatment. Appellant further notes that there was no testimony from Solis regarding the alcohol-possession allegation in the

19

modification motion and that the allegations of his street-gang involvement "fell apart on further examination."

The trial court, however, was not bound by Solis's recommendation of probation. *See R.R.*, 2025 WL 421222, at \*5 (citing cases holding that trial courts did not abuse their discretion by ordering juveniles to be committed to TJJD against the probation department's recommendation). The trial court was free to conclude that Solis contradicted her own testimony. Despite claiming that Appellant could turn his life around, Solis admitted to the trial court that he had been successful in "none" of his probation conditions, that he had absconded for several months while on probation, and that he had tested positive for drugs multiple times since his first encounter with the juvenile system. Additionally, Solis's probation recommendation was fraught with concerns as it was based on having him live with Maternal Uncle, who was not familiar with Appellant's friends, was unaware of his gang association, and had not undergone a background check.

Moreover, Appellant's argument ignores his written stipulations agreeing that he had violated his probation by possessing a bottle of liquor and associating with members of K4K on or about July 24, 2025. Plus, the Tarrant County Juvenile Services Resource Staffing Response Form (which is attached to the second social history report) states the following under the "Relevant Concerns" heading: "Concerns with access to firearms, continued criminal behavior, inadequate parental supervision, substance use[,] negative peer associations[,] and exposure to domestic

violence." And the social history reports reflect that Appellant had a high risk for reoffending.

The trial court therefore had sufficient information upon which to exercise its discretion. And the trial court did not err in its application of discretion, nor did it act without reference to guiding rules or principles but instead explained on the record its concerns about the dangers of Appellant's behavior, opining that it could result in someone's death (including Appellant's). We conclude that the trial court's disposition both promoted Appellant's welfare and protected the interest of public safety, and thus the trial court's actions were not arbitrary and unreasonable.[14]

---

[14]Appellant included the following statement in his summary of the argument: "The conditions precedent to commitment to TJJD under Section 54.05 were not adequately addressed at trial." Assuming without deciding that this argument has been adequately briefed, such argument is encompassed by the other more specific arguments that he raised and that were addressed above. The trial court, without using the term "best interest," made clear that it was concerned about the possibility of Appellant's being killed if he were given probation and continued to engage in firearm offenses. Additionally, the record was replete with testimony that Mother could not provide the quality of care and level of support and supervision that Appellant needed to meet the conditions of probation. Moreover, the record demonstrated that reasonable efforts had been made to prevent or eliminate the need for Appellant's removal from his home and that he had not been successful on probation but instead had picked up other offenses, had associated with a gang, and had absconded for several months. Accordingly, we disagree with Appellant and conclude that the conditions precedent to commitment to TJJD under Section 54.05 were adequately addressed at trial. *See In re D.L.S.W.*, No. 04-18-00807-CV, 2019 WL 2518157, at *3 (Tex. App.—San Antonio June 19, 2019, no pet.) (holding that evidence adduced at the modification hearing and juvenile's probation history were legally and factually sufficient to support the trial court's finding that placement outside the home was in juvenile's best interest and was required to provide the level of support and quality of care juvenile needed to meet her conditions of probation after reasonable efforts to keep her in her home were made).

Accordingly, we hold that the trial court did not abuse its discretion by ordering Appellant committed to TJJD. *See R.R.*, 2025 WL 421222, at \*5–6 (holding that trial court did not abuse its discretion by committing juvenile to TJJD even though juvenile's behavior had improved for two and half months and probation officer had recommended probation).

We overrule Appellant's sole issue.

## VI. Conclusion

Having overruled Appellant's sole issue, we affirm the trial court's "Judgment on Motion to Modify Disposition."

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: June 25, 2026