**Affirmed and Memorandum Opinion filed July 13, 2023.**



In The

# Fourteenth Court of Appeals

## NO. 14-21-00704-CV

## MARYBETH NELSON, AS ADMINSTRATOR OF THE ESTATE OF RACHEL HARGRAVES; ZACHARY HARGRAVES, WAYNE HARGRAVES AND MICHELLE HARGRAVES, AS NEXT FRIENDS OF O.H. AND L.H.; TONY KING, AS NEXT FRIEND OF A.K.; ZACHARY DULEVITZ, AS NEXT FRIEND OF R.D.; CHRISTOPHER LOWREY; AND JESSICA MCCUISTON, Appellants

V.

## H & E EQUIPMENT SERVICES, INC., Appellee

**On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause No. 20-CV-0069-B**

### MEMORANDUM OPINION

Appellants Marybeth Nelson, as administrator of the estate of Rachel Hargraves, deceased; Zachary Hargraves, Wayne Hargraves, and Michelle Hargraves as next friends of O.H. and L.H.; Tony King, as next friend of A.K.; Zachary Dulevitz, as next friend of R.D.; Christopher Lowrey ("Lowrey"); and

Jessica McCuiston ("McCuiston") appeal a no-evidence summary judgment granted in favor of appellee H & E Equipment Services, Inc. ("H&E"). In three issues, appellants argue they (1) raised a fact issue regarding all elements of appellants' negligence and negligence per se claims; (2) raised a fact issue regarding all elements of appellants' negligent entrustment claims; and (3) raised a fact issue regarding all elements of appellants' gross negligence claims. We affirm.

## I. BACKGROUND

H&E owns and leases construction equipment. On January 3, 2019, H&E leased a Komatsu WA320-7 loader ("front loader") to Texas Materials Group, Inc. d/b/a Old Castle Materials Texas, Inc. ("TMG") to be used on a construction project on Texas Highway 87 in Galveston County, Texas. The rental contract between H&E and TMG provides in relevant part:

> **OPERATION KNOWLEDGE -** Lessee warrants that individuals operating the Equipment are fully familiar with the Equipment, that they understand the operating instructions, warning and caution signs, and limitations of the Equipment, and that Lessee shall be solely responsible for informing all potential operators of the Equipment of said instructions, signs, and limitations. Lessee agrees to restrict the use of the Equipment to competent, qualified operators who are employees of Lessee. . . . Lessee shall comply with all laws, ordinances, and regulations relating to the possession, use, or maintenance of the Equipment. Lessee further acknowledges receipt of the applicable operational manual and has thoroughly studied and understood the same. Lessee shall not operate the Equipment and shall notify Lessor if any safety device or label is missing or damaged.

The contract further provides: "**BY ACCEPTING DELIVERY OF THE EQUIPMENT YOU AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT** . . . ." The contract is signed by H&E but unsigned by TMG, and includes a handwritten notation stating "No one on site."

On January 21, 2019, Jose Ordaz ("Ordaz"), TMG's employee, backed the

2

front loader into the unimpeded lane of traffic on which Rachel was driving, causing a collision between Rachel's vehicle and the back of the front loader. The collision resulted in Rachel's death and serious injuries to passengers Lowery and McCuiston.

On January 26, 2021, appellants filed their fourth amended petition against TMG, H&E, and Ordaz. In their live pleading, appellants alleged wrongful death and survival claims against H&E, as well as claims for negligence, gross negligence, respondeat superior, negligence per se, and negligent entrustment.

Appellants alleged that H&E delivered the front loader to the worksite "but failed to deliver and/or ensure delivery of the safety policies and procedures of the front loader tractor"; that the contract included provisions for the lessees/operators of the front loader to acknowledge receipt of applicable operation manuals "and that [the lessees/operators] had thoroughly studied the same"; failed to obtain a signature from TMG on the contract for the front loader in violation of H&E's policies and procedures; failed to ensure that the use of the front loader was restricted to competent, qualified operators who are employees of the lessee; failed to have any procedure in place to ensure operators of its equipment were properly licensed drivers, or in the alternative, "delivered the equipment and knowingly disregarded its policies and/or procedures to ensure no unqualified and/or unlicensed person operated the Front Loader Tractor."

Appellants alleged that H&E's negligence and gross negligence includes: failing to provide adequate safety policies and procedures; failing to warn of dangerous condition of its products; failing to provide safe machinery and equipment for work related to the subject construction; failing to furnish a safe product; failing to inspect the work site to ensure safety standards were met; failing to ensure that the construction site was in a safe condition for the work being performed at the time of the incident; failing to ensure that the equipment it provided was safe for its

3

intended purpose; failing to warn of the limitations of their construction equipment to accomplish the described work purpose; failing to warn of the safe operation and limitations of the equipment for the subject construction being performed; failing to provide warnings when leasing heavy equipment; failing to provide owner's/user's manuals when leasing heavy equipment; and allowing dangerous conditions to exist at the time of the incident.

As to their negligence per se claims, appellants argued that H&E knowingly allowed an unlicensed person to operate a vehicle in the course of employment in violation of Texas Transportation Code § 521.459(b); allowed an unlicensed driver to operate a vehicle in violation of Texas Transportation Code § 521.458; and failed to follow license restrictions in violation of Texas Transportation Code § 521.221(c). *See* Tex. Transp. Code Ann. §§ 521.221(c), 521.458, 521.459(b). As to negligent entrustment, appellants alleged H&E was negligent in entrusting the front loader to TMG and Ordaz and that H&E knew or should have known that Ordaz was an incompetent, unlicensed, and unqualified operator. Appellants alleged that H&E owed a duty to ensure that operators of the front loader were licensed; follow its procedures to ensure operators were licensed; have procedures to ensure operators were licensed; ensure that TMG received the safety procedures and manuals; and supervise TMG.

On July 8, 2021, H&E filed a no-evidence motion for summary judgment, arguing that there was no evidence of any of the essential elements of appellants' negligence claim on which H&E would have the burden of proof at trial; no evidence that H&E had a legal duty to ensure or restrict the use of the front loader or that H&E entrusted the front loader to Ordaz, and as such appellants could not sustain their negligent-entrustment claim; no evidence of malice, specific intent to injure, or conscious indifference, required to maintain appellants' gross negligence claim; and

4

no evidence that the statutory sections of the Texas Transportation Code relied on by appellants were applicable to H&E, as necessary for appellants to maintain their negligence per se claims.

In their response to H&E's no-evidence motion, appellants argued that: H&E leased and delivered the front loader to TMG without a Slow Moving Vehicle ("SMV") emblem, in violation of Chapter 544 of the Texas Transportation Code and the Texas Manual on Uniform Traffic Control Devices ("MUTCD"); leased the front loader to TMG with inadequate warnings that were not in compliance with the safety manual for the loader; and that H&E failed to ensure that only trained and authorized personnel operated the front loader. Appellants also attached the following evidence in support of their response:

- An excerpt from the MUTCD, revision 2, from October 2014, concerning "Work Affecting Pedestrian and Bicycle Facilities," "Work Outside of the Shoulder," "Work on the Shoulder with No Encroachment," the adoption of MUTCD, the purpose of traffic control devices, and principles of traffic control devices.

- An excerpt from the operation and maintenance manual for the WA320-7 front loader and the safety warnings for the machine.

- A copy of the rental contract between H&E and Old Castle Materials for a WA320-7 front loader.

- An excerpt of the deposition of Dusty Dubois, H&E's branch manager. In relevant part, Dubois testified that H&E expects their clients to fulfill every term of their contract, including that the lessee have a qualified operator for the machinery. Dubois testified that, to his knowledge, "you do not have to have a license to operate this machine" in the State of Texas.

Dubois testified that it was the customer's responsibility to read the machine's operation manual before operating the equipment. "[O]nce we release the equipment to a rental, it is up to the client to make sure that they are fulfilling the terms and conditions." Dubois agreed that the manual for the machine provided that the back-up warning label should be the highest placed label in the machine but that the label was placed between two other stickers on the window of the front loader in question. Dubois agreed that it was the responsibility of H&E to ensure the label is properly located in the machine.

- A handwritten note in Spanish, presumably from Ordaz, regarding what he experienced when the accident occurred.

- Excerpts from the deposition of Kimberly Chapman ("Chapman"), a witness to the accident. Chapman testified concerning pictures of the scene following the collision, which showed the front loader over the double yellow line dividing the two lanes of traffic and protruding into Rachel's lane of travel.

- Excerpts from Ordaz's deposition. Ordaz testified he was employed by TMG when he was charged or convicted for a second offense of driving while intoxicated, that he could not operate his personal vehicle without taking a breathalyzer test, and that the front loader he operated that day did not have a breathalyzer.

- Excerpts from the deposition of Scott Nicholas Blanchard ("Blanchard"), a corporate representative of TMG. Blanchard testified that TMG did not allow a front loader to enter an unimpeded lane of traffic during its operation and that he did not know whether there was a "safety triangle" on the back of the machine.

6

- Excerpts from the deposition of Patricia Patterson ("Patterson"). Patterson could not recall whether the machine had other safety devices or safety indicators than those depicted on "Exhibit 5," whether "equipment like that" should have other safety markers or safety designations, and whether the front loader had "a safety triangle on the back of it before the accident."

- Copies of a press release issued by Komatsu, the front loader's manufacturer, and an "About Us" information page.

- Excerpts from TGM's representative, Alejandrina Hernandez ("Hernandez"). Hernandez testified that Ordaz received daily training and pre-task analysis.

- Excerpts from the deposition of Wesley Henry West ("West"). West testified that two flaggers are required if one lane of traffic is closed.

- Excerpts from the deposition of Dusty Dubois ("Dubois"), the branch manager for H&E. Dubois testified that H&E expects its clients to fulfill every term and condition of the contract; that H&E relies on the customer's assurance that they have a qualified operator; that it is the customer's responsibility to notify H&E if they need a manual in Spanish; that H&E does not know who will be operating the equipment; that, according to the front loader's manual, the warning label concerning injury or death when the machine is backed up should be the highest label on the left hand side, but that the warning label in the front loader in question was located between two other labels; and that it was H&E's responsibility to make sure the labels are on the machine and adequately located.

In H&E's reply to appellants' response, H&E argued that, "at the time of the accident in question, the operation and use of the Front End Loader was exclusively

within the control of" TMG and Ordaz. H&E attached to its reply two expert reports prepared by experts retained by appellants.

On July 30, 2021, the trial court granted H&E's no-evidence motion for summary judgment. On September 2, 2021, H&E filed a motion to sever appellants' claims against H&E, which the trial court granted on September 20, 2021. This appeal followed.[1]

## II. DISCUSSION

In their first issue, appellants argue they raised a fact issue regarding all elements of their negligence and negligence per se claims.

## A. STANDARD OF REVIEW

After an adequate time for discovery, a party may move for a no-evidence summary judgment asserting that no evidence exists to support one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. Tex. R. Civ. P. 166a(i); *see LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006) (per curiam). The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the challenged elements of his claim. Tex. R. Civ. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A no-evidence summary judgment is improper if the nonmovant brings forth more than a scintilla of probative evidence raising a genuine issue of material fact. *Forbes Inc. v. Granada Bioscis., Inc.*, 124 S.W.3d 167, 172 (Tex. 2003).

"Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *King*

---

[1] Appellants also pleaded a claim against H&E for negligence based on respondeat superior. Appellants do not present any issue on appeal challenging the trial court's summary judgment as to their respondeat superior claim.

*Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)). More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.* Unless the nonmovant raises a genuine issue of material fact, the trial court must grant summary judgment. Tex. R. Civ. P. 166a(i).

We review a trial court's ruling on a motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We view the evidence in the light most favorable to the party against whom summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc.*, 206 S.W.3d at 582 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

## B.  NEGLIGENCE

The existence of a duty is generally a question of law, and that determination is made from the facts surrounding the occurrence in question. *Tri v. J.T.T.*, 162 S.W.3d 552, 563 (Tex. 2005); *see Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503 (Tex. 2017). When the issue on appeal is a question of law, we exercise de novo review. *See El Paso Nat'l Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex. 1999). However, a jury question can arise when the facts involving the duty are in dispute. *See Pagayon*, 536 S.W.3d at 503–04; *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 395 (Tex. 1991). When reviewing error under a de novo standard, we conduct an independent analysis of the record to arrive at our own legal conclusion. *See Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998); *Rieves v. Buc-ee's Ltd.*, 532 S.W.3d 845, 850 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

In determining whether a duty exists, we consider the risk, foreseeability, and likelihood of injury balanced against the social utility of the actor's conduct, the

9

magnitude of the burden of guarding against the injury, and the consequences of placing this burden on the defendant. *Pagayon*, 536 S.W.3d at 503–04; *see, e.g.*, *HNMC, Inc. v. Chan*, 637 S.W.3d 919, 929–34 (Tex. App.—Houston [14th Dist.] 2021, pet. filed) (en banc). We also consider whether one party would generally have superior knowledge of the risk or a right to control the actor who caused the harm. *Pagayon*, 536 S.W.3d at 504.

### 1. ANALYSIS

Appellants argue on appeal H&E owed a duty to members of the public under an ordinary negligence theory "to ensure that such equipment was equipped and furnished for its safe operation." Appellants argue on appeal that H&E breached this duty by leasing and delivering the front loader (1) without a SMV emblem; (2) with misplaced warnings concerning risks of serious injury and death when the front loader is moved in reverse;[2] (3) without securing an agreement "that those individuals it authorized or knowingly permitted to use its Loader are competent or qualified operators"; and (4) without verifying that "TMG present a license to operate the Loader."

#### a. Did H&E owe a duty to ensure the front loader was equipped and furnished for safe operations?

Appellants first argue that H&E, as the owner of the front loader, owed a duty "to ensure that such equipment was equipped and furnished for its safe operation" and "to properly equip the loader as required by statute." Appellants assert H&E breached a duty because the loader did not have an SMV emblem and the safety warning was not placed in the exact location specified in the front loader manual.

H&E does not provide a discussion or legal analysis of the risk-utility factors

---

[2] The record indicates that the front loader's manual specified that the warning was to be positioned at the highest location on the left-hand side of the operator's window.

or how the facts of this case support the imposition of a common-law duty on H&E based on the risk-utility test. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and the record."). Accordingly, we decline to perform the analysis to make such a determination. *See id.*; *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that "parties asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law supports their contentions"); *Grimm v. Grimm*, 864 S.W.2d 160, 163 (Tex. App.—Houston [14th Dist.] 1993, no writ) ("The burden of showing reversible error is on appellant as the complaining party."); *see also Canton-Carter v. Baylor College of Med.*, 271 S.W.3d 928, 931 (Tex. App.— Houston [14th Dist.] 2008, no pet.) ("Failure to cite legal authority or to provide substantive analysis of the legal issues presented results in waiver of the complaint.").

The rental contract between H&E and TMG states that TMG is to notify H&E if the equipment lacked a safety device or label for safe operations, that TMG received the manual and reviewed it before operating the front loader, and that TMG was bound by the terms and conditions of the rental agreement by delivery of the equipment, which appellants acknowledge was delivered. On this record, there is no evidence that H&E owed a duty to a third party as asserted by appellants. *See Central Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 652 (Tex. 2007) ("[A]n owner that provides training materials to an independent contractor is not liable if the latter fails to use them.").

Appellants cite two cases in support of their proposition that the owner of equipment owes a duty to the public "to ensure that such equipment was equipped and furnished for its safe operation." *See Gaber Co. v. Rawson*, 549 S.W.2d 19, 22

11

(Tex. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.); *Polasek v. Gaines Bros.*, 185 S.W.2d 609, 610 (Tex. App.—San Antonio 1945, writ ref'd). However, these cases do not support appellants' position.

In *Gaber*, a company-owned truck, operated by one of the company's employees, was transporting boxes that fell out of the truck onto the freeway, resulting in a four-car collision. There, the plaintiff presented proof of ownership of the truck as well as proof that the driver was in the course and scope of his employment with Gaber at the time of the accident, and that Gaber and its employee failed to exercise ordinary care. Our court affirmed the judgment of the trial court, concluding the evidence established the duty attendant to the jury's negligence finding. *Gaber Co.*, 549 S.W.2d at 22 ("Gaber Co. had a duty to secure its cargo in a way that would prevent it from falling off the truck and causing havoc on the freeway."). Here, there is no evidence that H&E was in control of TMG or Ordaz. *See id.* ("Appellant correctly states the law to be that proof of the employer's ownership of the vehicle and that the driver was employed by such employer creates a presumption that the driver was acting within the course and scope of his employment when the accident occurred."). We reject appellants' reliance on *Gaber* and conclude that it does not support the existence of a duty as to H&E.

*Polasek* also concerned a lawsuit against an employer (Gaines Brothers) and its employee (N. O. Dragoo) for damages "resulting from a collision between an automobile driven by [the plaintiff] and one driven by [Dragoo] and owned by Gaines Bros." *Polasek*, 185 S.W.2d at 609. The case does not discuss the issue of duty nor does it provide that the owner of equipment or a vehicle owes a duty to the general public to ensure that the equipment or vehicle is leased for safe operation to a third party for the third party's use. *See id.* Thus, we reject appellants' reliance on *Polasek*. We have not found, nor have appellants pointed us to, any authority

supporting their argument.

Finally, contrary to appellants' argument, we note that the Texas Supreme Court has held that the owners of equipment or vehicles "have no duty to ensure that an independent contractor performs its work in a safe manner." *Central Ready Mix Concrete*, 228 S.W.3d at 651 (concluding that owner of cement truck owed no duty to employee of contractor hired to clean the cement truck). Rather, the owner may be liable only to the extent it retained contractual or actual control over the contractor's employees. *Id.*

We conclude that the trial court did not err when it granted H&E's no-evidence summary-judgment motion on appellant's negligence claim based on a common-law negligence duty. *See Murray v. Devco, Ltd.*, 731 S.W.2d 555, 557 (Tex. 1987); *Grimm*, 864 S.W.2d at 163.

### b.    Did H&E owe appellants a duty under the rental contract?

Appellants also argue that H&E owed them a duty to ensure that the operator of the front loader was competent and qualified based on the rental contract between H&E and TMG.

A person may have a duty to control another's conduct if the duty is established by contract. *See Tex. Home Mgmt.*, 89 S.W.3d at 36; *see, e.g.*, *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 869–70 (Tex. 2021) (concluding that contract did not impose duty on general contractor to control subcontractors when contract specified that contractor had "no authority to direct, supervise, or control" subcontractor's work and required compliance with safety procedures and gave general contractor control over work schedules); *AEP Tex. Cent. Co v. Arredondo*, 612 S.W.3d 289, 296–97 (Tex. 2020) (concluding that contract did not impose a duty on general contractor to control subcontractors when general

13

contractor "did not have the right to control the means, methods, or details of [subcontractor's] work . . . ."). The plaintiff must establish that the contractual right to control related to the condition or activity that caused the injury. *JLB Builders*, 622 S.W.3d at 865.

Here, contrary to appellants' argument, it was TMG who contractually agreed to use a qualified operator when operating the front loader. This contractual provision does not impose a duty on H&E to ensure TMG would use a qualified operator, nor do appellants provide us with authority supporting such a conclusion. Furthermore, there was no evidence presented that H&E retained a right to control who drove or operated the front loader or that H&E knew or should have known who would operate the front loader. *See Central Ready Mix Concrete Co.*, 228 S.W.3d at 652.

## C.   NEGLIGENCE PER SE

Appellants also argue under their first issue that the trial court erred when it granted H&E's no-evidence motion as to their negligence per se claim.

The unexcused violation of a statute constitutes negligence as a matter of law if such statute was designed to prevent injury to the class of persons to which the injured party belongs. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549 (Tex. 1985); *see Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997) ("Negligence per se is a common-law doctrine in which a duty is imposed based on a standard of conduct created by a . . . statute rather than on the reasonably prudent person test used in pure negligence claims."). In most negligence per se cases, the defendant already owes the plaintiff a pre-existing common-law duty to act as a reasonably prudent person; thus, the statute's role is merely to define what conduct breaches that duty. *Perry v. S.N.*, 973 S.W.3d 301, 306 (Tex. 1998).

**1. Analysis**

Appellants argue on appeal that H&E owed a duty to properly equip the front loader as required by statute and cite to (1) Texas Transportation Code §§ 547.703 and 521.458(b); and (2) the Texas Manual on Uniform Control Devices, 2011 edition.

**a. Texas Transportation Code**

The Texas Transportation Code Chapter 547, titled "Vehicle Equipment" provides the following definitions:

In this chapter:

(7) "Slow-moving vehicle" means:

(A) a motor vehicle designed to operate at a maximum speed of 25 miles per hour or less, not including an electric personal assistive mobility device, as defined by Section 551.201; or

(B) a vehicle, implement of husbandry, or machinery, including road construction machinery, that is towed by:

(i) an animal; or

(ii) a motor vehicle designed to operate at a maximum speed of 25 miles per hour or less.

(8) "Slow-moving-vehicle emblem" means a triangular emblem that conforms to standards and specifications adopted by the director under Section 547.104.

Tex. Transp. Code Ann. § 547.001(7)–(8).

Section 547.003, titled "Additional Equipment Requirements for Slow-Moving Vehicles," states in relevant part:

(a) Except as provided by Subsection (b), a slow-moving vehicle shall display a slow-moving-vehicle emblem that:

(1) has a reflective surface designed to be clearly visible in daylight or at night from the light of standard automobile headlamps at a distance of at least 500 feet;

(2) is mounted base down on the rear of the vehicle and at a

15

height that does not impair the visibility of the emblem; and

(3) is maintained in a clean, reflective condition.

(b) Subsection (a) does not apply to a vehicle that is used in construction or maintenance work and is traveling in a construction area that is marked as required by the Texas Transportation Commission.

Tex. Transp. Code Ann. § 547.703(a)–(b); *see also id.* § 547.104 (titled "Slow-Moving-Vehicle Emblem Standards").

On appeal, appellants argue that the trial court erred in granting H&E's no-evidence motion for summary judgment as to their negligence-per-se claim based on the alleged absence of the SMV emblem. In their response to H&E's no-evidence motion for summary judgment, appellants pointed to the deposition testimony of Blanchard and Patterson and to three photographs in support of their argument that a fact issue existed as to their negligence-per-se claim based on the alleged absence of the SMV emblem. *See Salas v. Fluor Daniel Servs. Corp.*, 616 S.W.3d 137, 144 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) ("The nonmovant is 'not required to marshal its proof; its response need only *point out* evidence that raises a fact issue on the challenged elements." (quoting *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam))) (emphasis added).

Here, the deposition testimony of Blanchard and Patterson does not raise a fact issue as to whether the SMV emblem was missing; rather, the testimony provides that neither Blanchard nor Patterson could recall whether the SMV emblem was on the front loader. *See Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010) ("When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983))). As to the three photographs of the front loader, none of the photographs show the rear of the vehicle, where the Transportation Code

requires that the SMV emblem be located. *See* Tex. Transp. Code Ann. § 547.703(a)(2). Thus, this evidence fails to raise a fact issue as to whether the front loader was missing the SMV emblem.

We conclude that appellants failed to raise a fact issue as to their negligence-per-se claim based on the alleged absence of the SMV emblem. *See* Tex. R. Civ. P. 166a(i).[3]

### b.    Did H&E violate § 6G.06.02 of the Texas Manual on Uniform Traffic Control Devices ("MUTCD")?

Appellants also aver that H&E violated § 6G.06.02 of the MUTCD. According to appellants, that section provides that "if the equipment travels on the roadway, the equipment should be equipped with appropriate flags, high-intensity rotating, flashing, or strobe lights, and/or SLOW MOVING VEHICLE sign."

The Texas Transportation Code provides that the Texas Transportation Commission shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with Chapter 544 that correlates with, and to the extent possible, conforms to the system approved by the American Association of State Highway and Transportation Officials. Tex. Transp. Code Ann. § 544.001.

---

[3] We note that H&E attached photographs of the front loader to its reply to appellants' response to the no-evidence motion for summary judgment. While the nonmovant may rely on evidence filed by the movant in a summary judgment, *see Wilson v. Burford*, 904 S.W.2d 628, 629 (Tex. 1995) (per curiam), the nonmovant in a no-evidence motion for summary judgment must point out to the trial court the evidence that it is relying on to raise a fact issue. *See* Tex. R. Civ. P. 166a(i) cmt.; *Hamilton*, 249 S.W.3d at 426; *Plotkin*, 304 S.W.3d at 480–81; *San Saba Energy, L.P.*, 171 S.W.3d at 338; *see also Walker v. Eubanks*, No. 01-21-00643-CV, 2022 WL 3722404, at *6 (Tex. App.—Houston [1st Dist.] Aug. 30, 2022, no pet.) (mem. op.) (collecting cases); *Villa v. Gebetsberger*, No. 01-21-00529-CV, 2022 WL 3649368, at *4 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, no pet.) (mem. op.) ("The nonmovant may rely on evidence attached to a movant's combined traditional and no-evidence summary judgment motion, but the nonmovant bears the burden to specifically point out to the trial court which evidence raises a fact issue on the challenged elements."). Here, appellants only pointed the trial court to the evidence discussed above.

Contrary to appellants' argument, the MUTCD introduced by appellants into the record states "[t]he provisions of this Manual *do not create mandatory duties*, as opposed to discretionary duties, in the legal sense under the Texas Tort Claims Act and elsewhere." *See State Dep't of Highways & Pub. Transp. v. King*, 808 S.W.2d 465, 466 (Tex. 1991) ("Assuming that section 2B-17 applied to the accident site in this case, other provisions of the Manual indicate that it is not mandatory in the legal sense . . . ."); *Brazoria County v. Van Gleder*, 304 S.W.3d 447, 454 (Tex. App.—Houston [14th Dist.] 2009 pet. denied) ("We note . . . that compliance with the Manual's provisions is not mandatory."); *see also Chambers v. Tex. Dep't of Transp.*, No. 05-11-00519-CV, 2012 WL 1744706, at *5 (Tex. App.—Dallas May 16, 2012, pet. denied) (mem. op.) ("[T]he MUTCD does not establish a mandatory duty to install a particular traffic control device."); *Tex. Dep't of Transp. v. Andrews*, 155 S.W.3d 351, 359 (Tex. App.—Fort Worth 2004, pet. denied) ("Section 1A.09 provides that '[t]his Manual describes the application of traffic control devices, but shall not be a legal requirement for their installation.'"). Accordingly, we conclude that the trial court did not err when it granted H&E's no-evidence motion as to appellants' claim for negligence per se.

## D. DISPOSITION OF APPELLANTS' FIRST ISSUE

Because there is no evidence that H&E owed a duty to appellants as argued by appellants on appeal, and because there is no evidence that H&E violated any statutory provision relied on by appellants on appeal, we conclude that the trial court did not err when it granted H&E's no-evidence motion for summary judgment on appellants' claims for negligence and negligence per se. We overrule appellants' first issue.

## E. NEGLIGENT ENTRUSTMENT

In their second issue, appellants argue that they raised a fact issue as to all the

elements of their negligent-entrustment claim.

Generally, every person has a duty to not negligently entrust a vehicle to another. *4Front Engineered Solutions, Inc. v. Rosales*, 505 S.W.3d 905, 907 n.4 (Tex. 2016). Negligent entrustment applies only to automobiles and similar vehicles, not to industrial equipment like a forklift. *Id.* at 907 & n.5.

## 1. Analysis

To establish H&E's liability for negligent entrustment, appellants had to provide evidence that: (1) H&E entrusted the front loader to Ordaz; (2) Ordaz was an unlicensed, incompetent, or reckless operator; (3) at the time of the entrustment, H&E knew or should have known that Ordaz was an unlicensed, incompetent, or reckless operator; (4) Ordaz was negligent on the occasion in question; and (5) Ordaz's negligence proximately caused the accident. *See 4Front Engineered Solutions, Inc.*, 505 S.W.3d at 909. Here, there is no evidence that H&E entrusted the front loader to Ordaz. *See id.*

Appellants argue that H&E did not challenge the first element of their negligent-entrustment claim. Contrary to appellant's argument, H&E's no-evidence motion argued that the front loader was leased to TMG, that it had no power over the choice of operator of the front loader, and that "there is no issue of material fact as to H&E Equipment's entrustment of a vehicle to an unlicensed, incompetent, or reckless driver, that the owner knew or should have known to be unlicensed, incompetent, or reckless." Accordingly, we reject appellant's contention that H&E did not challenge the first element of their negligent-entrustment claim.

Appellants also assert that the lease of the front loader to TMG by H&E included leasing the equipment to TMG's employee Ordaz. Again, we disagree with appellants. The contract between TMG and H&E requires TMG to use a licensed and qualified operator when operating the front loader. There is no evidence in the

record that H&E knew or should have known that Ordaz was TMG's employee, that TMG would position Ordaz to operate the front loader, or that Ordaz was an unlicensed, incompetent, or reckless operator. Accordingly, we conclude that there was no evidence that H&E entrusted the front loader to Ordaz, and thus, the trial court did not err when it dismissed appellants' negligent-entrustment claim.

We overrule appellants' second issue.

## E.  GROSS NEGLIGENCE

In their third issue, appellants argue they raised a fact issue regarding all elements of their gross-negligence claim. Because we have determined that H&E owed no duty as argued by appellants, and because appellants rely on the same arguments to support a duty under its gross negligence issue, we need not address appellants' third issue. We overrule appellants' third issue.

## III.  CONCLUSION

We affirm the trial court's judgment.


/s/      Margaret "Meg" Poissant


Panel consists of Justices Spain, Poissant, and Wilson. (Spain, J., concurring without opinion).